[Cite as *State v. Thompson*, 2023-Ohio-4805.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                          :

    Plaintiff-Appellee,            :

                                No. 22AP-321

v.                                      :                          (C.P.C. No. 09CR-1170)

David A. Thompson,                      :          (REGULAR CALENDAR)

    Defendant-Appellant.           :

---

D E C I S I O N

Rendered on December 28, 2023

---

**On brief:** [*Janet Grubb*, First Assistant Prosecuting Attorney], and *Kimberly M. Bond*, for appellee. **Argued:** *Kimberly M. Bond*.

**On brief:** *Yeura R. Venters*, Public Defender, and *Leon J. Sinoff*, for appellant. **Argued:** *Leon J. Sinoff*.

---

APPEAL from the Franklin County Court of Common Pleas

LELAND, J.

{¶ 1} Defendant-appellant, David A. Thompson, appeals from a May 6, 2022 judgment of the Franklin County Court of Common Pleas issued following remand from this court. For the reasons that follow, we affirm in part and reverse in part.

**I. Facts and Procedural History**

{¶ 2} The present case is appellant's fourth appeal to this court stemming from his felony convictions for engaging in a pattern of corrupt activity, theft, tampering with records, money laundering, forgery, and filing incomplete, false, and fraudulent tax returns. Because the procedural history of the case is relevant to the issues in the present appeal, we explain that history in some detail.

{¶ 3} In 2009, plaintiff-appellee, the State of Ohio, charged appellant with 23 felony counts. The charges arose from appellant's actions during his tenure as pastor of the World of Pentecost Church (the "church") from 1995 to 2007. Following a bench trial, the court acquitted appellant of one count, found him guilty of a lesser-included offense on another count, and found him guilty of the remaining counts charged in the indictment.

{¶ 4} On December 8, 2010, the trial court issued its judgment entry imposing sentence. The court sentenced appellant to "a period of Community Control for Five (5) YEARS" on Counts 1 and 3 of the indictment and notified appellant he would "serve a prison sentence of Six (6) Years" if he violated his community control. (Dec. 8, 2010 Sentencing Entry at 2-3.) The court sentenced appellant to a 5-year term of imprisonment on Counts 4 through 16, and a 12-month term of imprisonment on Counts 17 through 23. The court ordered Counts 1 and 3 to run concurrent to each other and Counts 4 through 23 to run concurrent to each other but ordered Counts 1 and 3 to be served consecutive to Counts 4 through 23. The court specified that the 5-year term of community control on Counts 1 and 3 would "begin[] upon release from Ohio Department of Rehabilitation and Correction." (Dec. 8, 2010 Sentencing Entry at 3.) The court ordered appellant to pay restitution to the church in the amount of $733,048.86.

{¶ 5} Appellant appealed his conviction and sentence. In *State v. Thompson*, 10th Dist. No. 10AP-1004, 2011-Ohio-5169 ("*Thompson I*"), this court affirmed the judgment of conviction but reversed and remanded for the trial court to reduce the amount of restitution. Appellant did not raise any issue concerning his sentence to a consecutive term of community control in *Thompson I*.

{¶ 6} On November 12, 2014, after serving nearly four years of his five-year prison sentence, appellant filed a R.C. 2929.20 motion for judicial release. At a January 16, 2015 hearing, the trial court stated it would grant the motion for judicial release and suspend the "six-year prison sentence" on Counts 1 and 3 as well as the prison sentence on Counts 4 through 23. (Jan. 16, 2015 Tr. at 10.) The court further stated that, because it originally sentenced appellant to "a split sentence," the "community control portion of that sentence [as to Counts 1 and 3 would] begin as well as well as [sic] community control for the judicial release time." (Jan. 16, 2015 Tr. at 11.) On January 20, 2015, the court issued an entry granting appellant's motion for judicial release. The entry stated that the "remainder of the

Eleven (11) Years (Five years Prison and Six years suspended for Community Control)" was "suspended and Defendant [was] placed on Community Control for a period of Five (5) years under Intensive Supervision." (Jan. 20, 2015 Entry Granting Mot. for Judicial Release at 1-2.) The court imposed community control sanctions and ordered appellant to pay restitution to the church in the amount of $625,727.86.

{¶ 7} On March 13, 2019, appellant's probation officer filed a statement of violations with the trial court alleging that appellant violated his community control by failing to make appropriate restitution payments. The statement indicated that the balance remaining on appellant's restitution was $621,377.50. The court held a revocation hearing on April 26, 2019, and appellant stipulated to the community control violation at the hearing. Defense counsel argued at the hearing that appellant's sentence to a consecutive term of community control following a prison term was "contrary to law." (Apr. 26, 2019 Hearing Tr. at 7.)

{¶ 8} On May 2, 2019, the trial court issued an entry finding appellant "to be in violation" of his community control but concluding that appellant's community control "need not be revoked at this time." (May 2, 2019 Entry.) The trial court restored appellant to community control with the same sanctions and conditions imposed on January 16, 2015.

{¶ 9} Appellant appealed the May 2, 2019 entry to this court. In *State v. Thompson*, 10th Dist. No. 19AP-359, 2020-Ohio-6756 ("*Thompson II*"), decided December 17, 2020, we resolved the appeal and affirmed the court's May 2, 2019 entry. Relying on *State v. Hitchcock*, 157 Ohio St.3d 215, 2019-Ohio-3246, appellant argued in the appeal that the trial court erred by sentencing him to a period of community control on Counts 1 and 3 to be served consecutive to his prison sentence on the other counts. In *Hitchcock*, the Supreme Court of Ohio held that a trial court "may not impose community-control sanctions on one felony count to be served consecutively to a prison term imposed on another felony count," because "no provision of the Revised Code authorizes trial courts to impose" such a sentence. *Hitchcock* at ¶ 24. *See State v. Peoples*, 10th Dist. No. 21AP-45, 2022-Ohio-953, ¶ 24 (referring to a sentence of community control on one felony count to be served consecutively to a prison term on another felony count as a "split sentence").

{¶ 10} In *Thompson II*, appellant alleged that the *Hitchcock* error rendered his sentence void and subject to collateral attack. We explained that, because the trial court

possessed subject-matter jurisdiction over appellant's case and personal jurisdiction over appellant, any error in the exercise of the court's jurisdiction rendered appellant's sentence voidable, not void. *Thompson II* at ¶ 11-12. *See State v. Harper*, 160 Ohio St.3d 480, 2020-Ohio-2913, ¶ 42; *State v. Henderson*, 161 Ohio St.3d 285, 2020-Ohio-4784, ¶ 1. Because appellant could have, but did not, raise an argument regarding his sentence to a consecutive term of community control in his direct appeal, res judicata barred appellant's claims in *Thompson II*. *Id*. at ¶ 13.

{¶ 11} On October 23, 2019, while *Thompson II* was pending, appellant filed a motion in the trial court asserting that his sentence to a consecutive term of community control on Counts 1 and 3 was void pursuant to *Hitchcock*. On November 8, 2019, appellant's probation officer filed a statement of violations with the court alleging that appellant violated his community control by failing to make adequate payments toward restitution. The balance remaining on appellant's restitution as of November 8, 2019 was $620,175.

{¶ 12} The trial court held a community control revocation hearing on December 20, 2019. The court noted that there were "a couple of issues" before the court at the hearing, including the "revocation as it relates to the judicial release * * *, and then the revocation as it relates to the original sentence in which the Court imposed a split sentence of community control." (Dec. 20, 2019 Tr. at 3.) The court noted appellant's October 23, 2019 motion and found appellant's sentence to a consecutive term of community control on Counts 1 and 3 to be "a void sentence." (Dec. 20, 2019 Tr. at 3-4.) As such, the court concluded that appellant "[could not] be revoked on that" and "would have to be resentenced" on Counts 1 and 3. (Dec. 20, 2019 Tr. at 4.) Based on testimony from appellant's probation officer, the court revoked appellant's judicial release community control due to appellant's failure to make sufficient payments toward his restitution.

{¶ 13} On January 23, 2020, the court held a hearing to address appellant's ability to pay restitution. Following the hearing, the court issued a judgment entry finding appellant willfully or intentionally failed to pay restitution by not making a bona fide effort to acquire the resources to pay.

{¶ 14} The trial court held a sentencing hearing on June 25, 2020 to address both the "revocation as to Counts 4 through 23 and sentencing as to Counts 1 and 3." (June 25,

2020 Tr. at 3.) The court noted the pending appeal in *Thompson II* but stated that it wanted to "move forward" with the revocation and resentencing. (June 25, 2020 Tr. at 7.) The court stated that, "with respect to Counts 4 through 23," it had revoked appellant's community control and was "impos[ing] the remaining days on the [five-year] sentence." (June 25, 2020 Tr. at 12, 14.) The court noted that appellant had "1,520 days jail and prison time." (June 25, 2020 Tr. at 14.) The court sentenced appellant to concurrent five-year terms of imprisonment on Counts 1 and 3. (June 25, 2020 Tr. at 15.)

{¶ 15} On July 10, 2020, the trial court issued a judgment entry imposing sentence. The court stated that appellant's sentence on Counts 1 and 3 was "void under *State v. Hitchcock*," and the court resentenced appellant to concurrent six-year terms of imprisonment on Counts 1 and 3. (July 10, 2020 Entry at 2.) The court reimposed the aggregate five-year prison sentence on Counts 4 through 23 and stated that the sentence on Counts 4 through 23 would run "consecutively to Counts One and Three, for a total of Eleven (11) years." (July 10, 2020 Entry at 3.) The court ordered appellant to pay restitution in the amount of $625,727.86 to the church. On July 22, 2020, the court granted appellant's motion to stay sentence pending appeal.

{¶ 16} Appellant appealed the July 10, 2020 entry to this court. In *State v. Thompson*, 10th Dist. No. 20AP-352, 2021-Ohio-4491 ("*Thompson III*"), decided December 21, 2021, we resolved the appeal and affirmed in part and reversed in part the trial court's July 10, 2020 entry. We agreed with appellant that the trial court lacked jurisdiction to resentence him on Counts 1 and 3 while *Thompson II* was pending. As such, we held that the portion of the July 10, 2020 entry "resentencing appellant to a prison term on Counts 1 and 3 [was] void" and that "[a]ppellant's sentence on Counts 1 and 3 remain[ed] the sentence originally imposed in 2010: 5-year terms of community control to be served concurrently to each other and consecutive to the sentence on Counts 4 through 23." *Thompson III* at ¶ 33, citing *Harper* at ¶ 42. We also clarified that, when the trial court granted appellant judicial release in 2015, it could only release him from the non-mandatory prison sentence he was serving on Counts 4 through 23; it could not grant appellant judicial release from his term of community control on Counts 1 and 3. *Thompson III* at ¶ 26. Because appellant had to serve the remainder of his prison term on Counts 4 through 23 due to the revocation of his judicial release community control, and

because the trial court originally sentenced appellant to serve Counts 1 and 3 consecutive to Counts 4 through 23, we noted that the five-year term of community control on Counts 1 and 3 would begin after appellant completed "the approximate 11-month prison term remaining on Counts 4 through 23." *Thompson III* at ¶ 34.

{¶ **17**} In *Thompson III*, appellant also argued the trial court erred by finding he did not make a sufficient bona fide effort to acquire the resources to pay his restitution. We reviewed the evidence presented at the January 23, 2020 ability to pay hearing and determined that the record "supported the court's conclusion that appellant willfully or intentionally failed to pay restitution by not making a bona fide effort to acquire the resources to do so." *Thompson III* at ¶ 45. *See Bearden v. Georgia*, 461 U.S. 660 (1983). In *Thompson III*, we reversed the portion of the court's July 10, 2020 entry resentencing appellant on Counts 1 and 3 but affirmed the court's decision to revoke appellant's judicial release community control and impose the remainder of the prison sentence on Counts 4 through 23. We remanded the case to the trial court for proceedings consistent with our decision.

{¶ **18**} On March 25, 2022, the trial court held a sentence enforcement hearing. At the hearing, defense counsel asked the court to "exercise a degree of discretion and mercy," and place appellant "on community control now" rather than imposing the "ten months of imprisonment followed by five more years of [community control]." (Mar. 25, 2022 Hearing Tr. at 6.) Appellant and appellant's wife personally addressed the court. The prosecutor noted that the court did not have "the authority to do anything but enforce * * * the 305 days that [appellant] ha[d] left" on his prison sentence on Counts 4 through 23. (Mar. 25, 2022 Hearing Tr. at 23.) The court initially stated that it had to "enforce" the five-year prison sentence on Counts 1 and 3, but the prosecutor "clarif[ied]" that the court was "sending [appellant] back" to serve the rest of his five-year prison sentence on Counts 4 through 23. (Mar. 25, 2022 Hearing Tr. at 24, 26-27.) The court agreed with the prosecutor and stated that appellant's sentence consisted of a five-year term of imprisonment on Counts 4 through 23 "running consecutive to Counts 1 and 3 which he is placed on community control for the split sentence." (Mar. 25, 2022 Hearing Tr. at 27-28.)

{¶ **19**} On May 6, 2022, the trial court issued a judgment entry imposing sentence. The court noted appellant's original 2010 sentence and noted that on December 20, 2019,

the court revoked appellant's community control and found appellant's sentence on Counts 1 and 3 void pursuant to *Hitchcock*. The court stated that on June 26, 2020, appellant appeared in court represented by counsel and the court afforded appellant an opportunity to make a statement on his own behalf in mitigation. The court then stated as follows:

> As to Counts One and Three, the Court hereby imposes the following sentence: **Six (6) YEARS as to Count One and Six (6) YEARS as to Count Three, to run currently and to be served at the OHIO DEPARTMENT OF REHABILITATION AND CORRECTIONS**. As to the remaining Counts, based on all the foregoing, the Court hereby imposes the following sentence: **Sixty (60) months as to Counts Four, Five, Six, Seven, Eight, Nine, Ten, Eleven, Twelve, Thirteen, Fourteen, Fifteen, and Sixteen; Twelve (12) months as to Counts Seventeen, Eighteen, Nineteen, Twenty, Twenty-one, and Twenty-two. Said sentence is to be served at the OHIO DEPARTMENT OF REHABILITATION AND CORRECTIONS. Counts Four through Twenty-three are to run concurrently to each other, but consecutively to Counts One and Three, for a total of Eleven (11) years. The sentence is to be enforced July 24, 2020**.

(Emphasis sic.) (May 6, 2022 Entry at 3.)

{¶ 20} The trial court further stated that appellant "appealed the Court's decision," resulting in *Thompson III*. (May 6, 2022 Entry at 3.) The court noted it held a sentence enforcement hearing on March 25, 2022, where it "addressed [appellant] personally, affording him an opportunity to make a statement in his own behalf in the form of mitigation." (May 6, 2022 Entry at 3.) The court stated that it "hereby imposes a period of Community Control for Five (5) YEARS, for Counts One and Three" to be served "after the prison term imposed on the other counts." (May 6, 2022 Entry at 4.) The court imposed community control sanctions and ordered appellant to "pay restitution of $625,727.86." (May 6, 2022 Entry at 4.) On June 6, 2022, the court granted appellant's motion to stay sentence pending appeal.

**II. Assignments of Error**

{¶ 21} Appellant appeals and assigns the following four assignments of error for our review:

[I.] The Trial Court's Judgment Entry of May 6, 2022, Violates Appellant's Constitutional Rights to Due Process of Law and Contravenes Crim.R. 32(C).

[II.] Imposing a Prison Sentence Upon Appellant Solely For Insufficient Payment Towards Financial Obligations, When Appellant Habitually Paid on Those Obligations as Directed By His Probation Officer, Violates Appellant's Constitutional Rights to Equal Protection and Due Process of Law.

[III.] The Portion of Appellant's Sentence Which Imposed Delayed Community Control on Counts One and Three May Not Be Actually Imposed, Because It Was Illegal at Its Inception, Has Been Termed "Void" By the Trial Court, and it Would Violate Constitutional Due Process and Thwart R.C. 2929.15(A) to Begin a New Term of Community Control Thirteen Years After Original Imposition of Sentence.

[IV.] Appellant May Not Have His Community Control Revoked on Counts One and Three Because That Directly Contradicts the Explicit Prior Ruling of This Court in *Thompson III*.

## III. First & Fourth Assignments of Error – The May 6, 2022 Entry

{¶ 22} For ease of analysis, we address appellant's first and fourth assignments of error jointly. Appellant's first assignment of error asserts the trial court's May 6, 2022 entry contravenes Crim.R. 32(C) and his right to due process because the entry is ambiguous regarding his sentence. Appellant's fourth assignment of error asserts the trial court erred by sentencing him to a term of imprisonment on Counts 1 and 3 in the May 6, 2022 entry.

{¶ 23} A judgment of conviction must "set forth the fact of conviction and the sentence." Crim.R. 32(C). A sentence is defined as "the sanction or combination of sanctions imposed by the sentencing court on an offender who is convicted of or pleads guilty to an offense." R.C. 2929.01(EE). The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment to the United States Constitution, " 'protects against multiple punishments for the same offense.' " *United States v. DiFrancesco*, 449 U.S. 117, 129 (1980), quoting *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969). *Accord State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, ¶ 10.

{¶ 24} The May 6, 2022 entry states both that the court "hereby imposes the following sentence: Six (6) YEARS as to Count One and Six (6) YEARS as to Count Three," and that the court "hereby imposes a period of Community Control for Five (5) YEARS, for Counts One and Three." (Emphasis omitted.) (May 6, 2022 Entry at 3-4.) Accordingly, the May 6, 2022 entry appears to sentence appellant to both a term of imprisonment and a term of community control on Counts 1 and 3.

{¶ 25} We are cognizant the trial court was detailing the history of the case in the May 6, 2022 entry, and that the court's reference to the six-year term of imprisonment on Counts 1 and 3 likely referred to the sentence the court imposed on July 10, 2020. Indeed, the May 6, 2022 entry states that the prison sentence on Counts 1 and 3 "is to be enforced July 24, 2020" and that appellant "appealed the Court's decision." (Emphasis omitted.) (May 6, 2022 Entry at 3.) However, by using the present tense and stating that the court "hereby imposes" both the six-year prison term and the five-year term of community control on Counts 1 and 3, the May 6, 2022 entry is ambiguous regarding appellant's sentence. (May 6, 2022 Entry at 3.)

{¶ 26} It is axiomatic that "[a] court of record speaks only through its journal entries." *State ex rel. Geauga Cty. Bd. of Commrs. v. Milligan*, 100 Ohio St.3d 366, 2003-Ohio-6608, ¶ 20. When a court's sentencing entry is unclear and ambiguous, an appellate court may remand for clarification. *See State v. Small*, 10th Dist. No. 00AP-1149 (May 1, 2001) (stating that the case had to be remanded "for clarification of appellant's sentence" because the "sentence [was] unclear"). *See also State v. Marbury*, 10th Dist. No. 03AP-233, 2004-Ohio-3373, ¶ 67, quoting *State v. Nye*, 10th Dist. No. 95APA11-1490 (June 4, 1996) (stating that " 'a defendant [is] entitled to have ambiguous language construed in his favor, if the court's oral pronouncement of the sentence differed from the journal entry' ").

{¶ 27} However, the trial court did accurately state appellant's sentence at the end of the March 25, 2020 hearing. Although the court initially indicated appellant's sentence on Counts 1 and 3 was a term of imprisonment, the court corrected itself and stated that appellant's sentence consisted of a five-year term of imprisonment on Counts 4 through 23 and a consecutive term of community control on Counts 1 and 3. (Mar. 25, 2022 Hearing Tr. at 24, 27-28.) The court told the prosecutor he was "correct" when the prosecutor stated that appellant's sentence consisted of a "five-year prison term" on "Counts 4 through 23"

and a "five-year term of community control" on "Counts 1 and 3" to be served "consecutive to his being revoked on Counts 4 through 23." (Mar. 25, 2022 Hearing Tr. at 27.)

{¶ 28} "It is well settled that courts possess the authority to correct errors in judgment entries so that the record speaks the truth." *State v. Lester*, 130 Ohio St.3d 303, 2011-Ohio-5204, ¶ 18, citing *State ex rel. Fogle v. Steiner*, 74 Ohio St.3d 158, 163-64, (1995); Crim.R. 36. Nunc pro tunc entries "are used to make the record reflect what the court actually decided and not what the court might or should have decided or what the court intended to decide." *Lester* at ¶ 18, citing *State v. Miller*, 127 Ohio St.3d 407, 2010-Ohio-5705, ¶ 15. Clerical errors subject to correction through a nunc pro tunc entry include any "error, mistake, or omission that is mechanical in nature and apparent on the record and does not involve a legal decision or judgment." *Id.*, citing *Miller* at ¶ 15. *See State v. Taylor*, 3d Dist. No. 13-10-49, 2011-Ohio-5080, ¶ 52-53 (stating that "[d]espite the innumerable errors in the verdict forms and judgment entries" the errors were "clerical" and correctable through a nunc pro tunc entry); *State v. Davids*, 8th Dist. No. 110890, 2022-Ohio-2272, ¶ 55. Because the trial court accurately stated appellant's sentence at the end of the March 25, 2022 hearing, the court may correct the clerical errors in the May 6, 2022 entry through a nunc pro tunc entry.

{¶ 29} Additionally, although defense counsel asked the trial court to exercise discretion regarding appellant's sentence at the March 25, 2022 hearing, we note that the trial court did not have such discretion. "It is well settled that '[a] trial court must follow the mandate of the appellate court and, in the case of a partial remand, the trial court may not try any issue other than that set forth in the [appellate court's] mandate.' " *Pingue v. Hyslop*, 10th Dist. No. 01AP-1000, 2002-Ohio-2879, ¶ 22, quoting *Oliver v. Empire Equip. Co.*, 8th Dist. No. 48686 (Apr. 11, 1985). *Accord State v. Bass*, 10th Dist. No. 14AP-992, 2015-Ohio-3979, ¶ 9; *State v. Zell*, 6th Dist. No. E-14-013, 2014-Ohio-4973, ¶ 12. A trial court must "proceed on remand from the point at which the error occurred." *State v. Chinn*, 85 Ohio St.3d 548, 565 (1999). *See also State v. Gales*, 9th Dist. No. C.A. 30532, 2023-Ohio-2753, ¶ 5-6. In *Thompson III*, we held that the trial court's July 10, 2020 resentencing on Counts 1 and 3 was void, that appellant's sentence on Counts 1 and 3 remained the sentence originally imposed in 2010, and that appellant had to serve the balance of his prison sentence remaining on Counts 4 through 23 due to the revocation of his judicial

release community control. Thus, following *Thompson III*, the trial court did not have discretion to consider whether to revoke appellant's judicial release community control, whether to reimpose the prison sentence on Counts 4 through 23, or to otherwise reconsider appellant's sentence on Counts 1 and 3.

{¶ 30} Our review of the May 6, 2022 entry reveals additional clerical errors in the entry. Although the trial court stated the sentence for Count 23 at the March 25, 2022 hearing, the May 6, 2022 entry does not identify the sentence for Count 23. The May 6, 2022 entry states that appellant had "27 days of jail time credit," but the prosecutor informed the court at the March 25, 2022 hearing that appellant had just "305 days * * * left" to serve on Counts 4 through 23, and the trial court previously noted that appellant had "1,520 days of jail and prison time." (May 6, 2022 Entry at 4; Mar. 25, 2022 Hearing Tr. at 23; June 25, 2020 Tr. at 14.)  The May 6, 2022 entry also identified appellant's restitution balance as $625,727.86. At the March 25, 2022 hearing, the court recognized that $625,727.86 was the "original amount" of restitution. (Mar. 25, 2022 Hearing Tr. at 28.)  The record demonstrates that appellant's restitution balance was $625,727.86 in 2015, and that the balance had decreased since that time. Accordingly, in the nunc pro tunc entry, the court must accurately state appellant's sentence on all counts, accurately credit appellant with time served on Counts 4 through 23, and accurately state appellant's current restitution balance.

{¶ 31} Under his first assignment of error, appellant also asks this court to terminate his sentence to community control on Counts 1 and 3.  Appellant contends that, pursuant to his term of judicial release community control, he has "already served, practically speaking, much more than the [five-year] maximum term of community control available under" R.C. 2929.15(A)(1). (Appellant's Brief at 35.)  We disagree.

{¶ 32} In *Thompson III*, we explained that, when the trial court granted appellant judicial release, it could only release him from the prison sentence he was serving on Counts 4 through 23. During his term of judicial release community control, appellant was "still effectively serving his sentence on Counts 4 through 23." *Thompson III* at ¶ 30.  Because the trial court originally sentenced appellant to serve his community control sentence on Counts 1 and 3 consecutive to his sentence on Counts 4 through 23, "appellant's sentence on Counts 1 and 3 could not begin until appellant completed his sentence on Counts 4

through 23," either by "successfully complet[ing] the term of his judicial release community control or complet[ing] the prison term on Counts 4 through 23." *Thompson III* at ¶ 31.

{¶ 33} Appellant now contends that, because he served nearly all his five-year term of judicial release community control before the trial court revoked his judicial release, he cannot serve his five-year sentence to community control on Counts 1 and 3. R.C. 2929.15(A)(1) provides, in relevant part, as follows:

> If in sentencing an offender for a felony the court is not required to impose a prison term, a mandatory prison term, or a term of life imprisonment upon the offender, the court may directly impose a sentence that consists of one or more community control sanctions authorized pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code.  * * *
>
> The duration of all community control sanctions imposed on an offender *under this division* shall not exceed five years.

(Emphasis added.)

{¶ 34}  However, appellant has not served any of his sentence to community control under R.C. 2929.15. Rather, he has only served his term of judicial release community control under R.C. 2929.20. R.C. 2929.20(K) provides, in relevant part, as follows:

> If the court grants a motion for judicial release under this section, the court shall order the release of the eligible offender or state of emergency-qualifying offender, shall place the offender under an appropriate community control sanction, under appropriate conditions, and under the supervision of the department of probation serving the court and shall reserve the right to reimpose the sentence that it reduced if the offender violates the sanction. If the court reimposes the reduced sentence, it may do so either concurrently with, or consecutive to, any new sentence imposed on the eligible offender or state of emergency-qualifying offender as a result of the violation that is a new offense. Except as provided in division (N)(5)(b) of this section [pertaining to offenders who are in imminent danger of death, medically incapacitated, or terminally ill], the period of community control shall be no longer than five years. The court, in its discretion, may reduce the period of community control by the amount of time the offender spent in jail or prison for the offense and in prison.

{¶ 35} Accordingly, the plain language of R.C. 2929.15 and 2929.20 demonstrate that each statute contains a five-year limitation "but as it pertains to the subject matter of each of the statutory sections." *State v. Briggs*, 8th Dist. No. 99980, 2014-Ohio-705, ¶ 13. *Compare* R.C. 2929.20(N)(5)(b) (stating that if a court grants a terminally ill offender judicial release, the court must place the offender on community control but the "period of community control is not subject to the five-year limitation described in division (K) *of this section*") (emphasis added); *with* R.C. 2929.15(B)(1)(a) (stating that if an offender violates their community control imposed pursuant to R.C. 2929.15, the sentencing court my impose a longer time under the same sanction so long as "the total time under the sanctions does not exceed the five-year limit specified in division (A) *of this section*") (Emphasis added.).

{¶ 36} "Courts have consistently found that R.C. 2929.15 and R.C. 2929.20 are independent statutes and serve different purposes." *State v. Justice*, 4th Dist. No. 12CA11, 2013-Ohio-2049, ¶ 11. *See State v. Jones*, 3d Dist. No. 10-07-26, 2008-Ohio-2117, ¶ 12. Indeed, "[w]hile community control *sanctions* are imposed when judicial release is granted, judicial release is different from and not synonymous with community control." (Emphasis sic.) *State v. Arm*, 3d Dist. No. 14-14-03, 2014-Ohio-3771, ¶ 1, fn. 1. *Accord State v. Lammie*, 3d Dist. No. 3-21-12, 2022-Ohio-419, ¶ 10; *Thompson III* at ¶ 28.

{¶ 37} In *State v. Jenkins*, 4th Dist. No. 10CA3389, 2011-Ohio-6924, the court rejected the contention that R.C. 2929.15(A)(1) and 2929.20(K) should be read together to impose a single five-year limitation on both types of community control. The court concluded that "the plain language" of the statutes demonstrated "R.C. 2929.15(A)(1) and R.C. 2929.20(K) should be read separately, not together." *Id.* at ¶ 16. The court noted that the language in R.C. 2929.15(A)(1), stating the five-year limitation applicable to community control sanctions imposed "under this division," clearly "limit[ed] R.C. 2929.15(A)(1)'s five-year maximum to community control imposed under R.C. 2929.15(A)(1)." *Id.* at ¶ 16. The court further noted that, while R.C. 2929.20(K) expressly permitted a court to reduce the term of judicial release community control by the amount of time the offender spent in jail or prison, "having served community control under R.C. 2929.15 is *not* listed as something that may reduce community-control time under R.C. 2929.20(K)." (Emphasis sic.) *Id.* at ¶ 16. The court found "no statutory language to suggest that the five-year maximums under

R.C. 2929.15(A)(1) and R.C. 2929.20(K) should be combined." *Id*. at ¶ 14. *Accord Briggs* at ¶ 14-15.

{¶ 38} We agree with *Jenkins*. The plain language of R.C. 2929.15 and 2929.20 demonstrate that each statute imposes a five-year limitation on the term of community control imposed under each respective division. Thus, an offender may serve a five-year term of community control under R.C. 2929.15 and a five-year term of judicial release community control under R.C. 2929.20. There is no language in either statute indicating that the General Assembly intended for R.C. 2929.15 and 2929.20 to impose a collective five-year limitation on both a sentence of community control and a term of community control imposed pursuant to judicial release. Such a finding would contravene the well-established principle that R.C. 2929.15 and 2929.20 are separate statutes with different purposes and would add language to the statutes by judicial construction. *See Gabbard v. Madison Local School Dist. Bd. of Edn.*, 165 Ohio St.3d 390, 2021-Ohio-2067, ¶ 13 (holding that a court must "give effect to the words the General Assembly has chosen, and * * * neither add to nor delete from the statutory language").

{¶ 39} Accordingly, appellant's term of judicial release community control on Counts 4 through 23 may not reduce appellant's sentence to community control on Counts 1 and 3. Because appellant has yet to serve any of his original sentence to community control on Counts 1 and 3, appellant has not exceeded the maximum duration of community control under R.C. 2929.15(A)(1).

{¶ 40} We acknowledge that the present case presents the unusual situation where appellant is serving an unlawful split sentence. Appellant could have, but did not, raise an argument regarding his sentence to a consecutive term of community control in his direct appeal. Although the trial court sentenced appellant in 2010, and the Supreme Court decided *Hitchcock* in 2019, nothing prevented appellant from raising an argument regarding his split sentence in his direct appeal. *See State v. Reynolds*, 79 Ohio St.3d 158, 161-62 (1997) (holding that, although applicable case law would have defeated the defendant's arguments, nothing "precluded [the defendant] from directly appealing the issues" and, by failing to raise the issues in his direct appeal, res judicata barred the defendant from raising the issues in a subsequent proceeding); *State v. Braden*, 10th Dist. No. 17AP-321, 2018-Ohio-1807, ¶ 13 (explaining that a "change in case law after final

judgment does not prevent the application of res judicata"); *State v. Ayala*, 10th Dist. No. 12AP-1071, 2013-Ohio-1875, ¶ 14, quoting *State v. Szefcyk*, 77 Ohio St.3d 93, 95 (1996). *See also Harper* at ¶ 5 (holding that when a sentencing court has jurisdiction to act, sentencing errors render the sentence "voidable, not void, and it is not subject to collateral attack"). As such, res judicata barred appellant's claims regarding his split sentence in each proceeding following his direct appeal. *Thompson II* at ¶ 13.

{¶ 41} Based on the foregoing, we sustain appellant's fourth assignment of error, and sustain in part and overrule in part appellant's first assignment of error.

## IV. Second Assignment of Error – Revocation of Community Control

{¶ 42} Appellant's second assignment of error asserts the trial court erred by revoking his community control due to his insufficient payments toward restitution. Appellant claims he did not receive "clear notice or fair warning" that his restitution payments of $200 per month from July 2019 onward would result in revocation of his community control. (Appellant's Brief at 47-48.) *See United States v. Twitty*, 44 F.3d 410, 412 (6th Cir.1995), citing *United States v. Gallo*, 20 F.3d 7, 11 (1st Cir.1994) (stating that due process requires "notice or fair warning of what conduct might result in revocation" of probation).

{¶ 43} The trial court revoked appellant's judicial release community control at the December 20, 2019 hearing and reimposed the prison term on Counts 4 through 23 at the June 25, 2020 sentencing hearing. Accordingly, appellant could have raised his present argument regarding the revocation of his community control in *Thompson III*. "*Res judicata* may be applied to bar further litigation of issues that were raised previously or could have been raised previously in an appeal." *State v. Houston*, 73 Ohio St.3d 346, 347 (1995). *Accord State v. Perry*, 10 Ohio St.2d 175 (1967), paragraph nine of the syllabus (holding that a final judgment of conviction bars a defendant from "raising and litigating in any proceeding except an appeal from that judgment, any defense or any claimed lack of due process that was *raised or could have been raised by the defendant at the trial*, which resulted in that judgment of conviction, *or on an appeal* from that judgment") (emphasis sic); *State v. Martin*, 10th Dist. No. 07AP-362, 2008-Ohio-3299, ¶ 7; *State v. Bridgewater*, 10th Dist. No. 22AP-417, 2023-Ohio-1211, ¶ 11. Res judicata "requires a plaintiff to present every ground for relief in the first action, or be forever barred from asserting it." *Natl.*

*Amusements, Inc. v. Springdale*, 53 Ohio St.3d 60, 62 (1990). The doctrine "promotes the principles of finality and judicial economy by preventing endless relitigation of an issue on which a defendant has already received a full and fair opportunity to be heard." *State v. Saxon*, 109 Ohio St.3d 176, 2006-Ohio-1245, ¶ 18.

{¶ 44} Although appellant did not raise in *Thompson III* the precise argument he raises now, "res judicata bars someone from raising a claim that could have been raised and litigated in a prior proceeding." *State v. Blanton*, 171 Ohio St.3d 19, 2022-Ohio-3985, ¶ 2, citing *Perry*. Accordingly, because appellant could have raised an argument in *Thompson III* that the revocation of his community control failed to comply with due process, res judicata bars appellant from raising this claim in the present appeal.

{¶ 45} Appellant contends that applying res judicata to bar his present argument would be unjust. (Appellant's Brief at 49-51.) "The binding effect of res judicata has been held not to apply when fairness and justice would not support it." *State ex rel. Estate of Miles v. Piketon*, 121 Ohio St.3d 231, 2009-Ohio-786, ¶ 30. While exceptions to res judicata "may apply in some extraordinary situations," courts will not find an exception to the doctrine "when the parties had a full and fair opportunity to be heard on an issue, the trial court issued a final, appealable order determining that issue, the parties failed to pursue a direct appeal or other available remedies to challenge that court's order," and the record contains no evidence of "bad-faith acts" by the parties. *AJZ's Hauling, L.L.C. v. Trunorth Warranty Programs of N. Am.*, ____ Ohio St.3d ____, 2023-Ohio-3097, ¶ 18, 19. *See also Natl. Amusements, Inc.* at 62-63, citing Friedenthal, Kane & Miller, *Civil Procedure*, 656, Section 14.8 (1985). Appellant had the opportunity to raise the argument he now presents in *Thompson III*, and the record contains no evidence of bad-faith acts by the parties. As such, appellant does not convince this court that the application of res judicata would be unjust in the present case.

{¶ 46} Although appellant's present contentions are barred by res judicata, appellant has yet to serve his five-year term of community control on Counts 1 and 3. Considering the history of this case, we find the trial court should establish a specific monthly amount appellant must pay toward his restitution to comply with his community control sanctions. The "monthly restitution amount should not exceed the percentage of [appellant's] wages allowed to be garnished under R.C. 2716.02 and R.C. 2929.18(D)(2)[(e)], which limits the

monthly payment to 25% of the debtor's personal disposable income." *State v. Barker*, 2d Dist. No. 26703, 2016-Ohio-315, ¶ 30. *See also State v. Will*, 10th Dist. No. 18AP-759, 2019-Ohio-3906, ¶ 7, 33; *State v. Estright*, 9th Dist. No. 27598, 2016-Ohio-1194, ¶ 2, 3. Accordingly, when appellant begins his term of community control on Counts 1 and 3, the trial court should hold a hearing to consider appellant's ability to pay and establish a reasonable monthly restitution payment for him. Appellant may pay more than the minimum amount each month, and is encouraged to do so, but so long as he pays the minimum monthly amount he will not violate the financial sanction of his community control.

{¶ 47} Based on the foregoing, we overrule appellant's second assignment of error.

## V. Third Assignment of Error – Split Sentence

{¶ 48} Appellant's third assignment of error asserts that his sentence to a consecutive term of community control on Counts 1 and 3 was illegal pursuant to *Hitchcock*. (Appellant's Brief at 53.) Appellant previously raised this argument in *Thompson II*, and we held that res judicata barred appellant from raising a claim regarding his split sentence in a proceeding subsequent to his direct appeal. *Thompson II* at ¶ 12-13. *See also Peoples* at ¶ 35. Res judicata continues to bar appellant's argument regarding his sentence to a consecutive term of community control on Counts 1 and 3. Appellant's third assignment of error is overruled.

## VI. Conclusion

{¶ 49} Having sustained in part and overruled in part appellant's first assignment of error, sustained appellant's fourth assignment of error, and overruled appellant's second and third assignments of error, the judgment of the Franklin County Court of Common Pleas is affirmed in part and reversed in part. The case is remanded to that court for proceedings consistent with law and this decision.

{¶ 50} On remand, we instruct the trial court to issue a nunc pro tunc entry to correct the clerical errors in the May 6, 2022 entry. The nunc pro tunc entry must state that the court's July 10, 2020 resentencing on Counts 1 and 3 was void; that appellant's sentence on Counts 1 and 3 remains the sentence originally imposed on December 8, 2010; five-year terms of community control to be served concurrently to each other and consecutive to the sentence on Counts 4 through 23; and that, due to the revocation of appellant's judicial

release community control, appellant must serve the prison term remaining on Counts 4 through 23 with credit for time served. The nunc pro tunc entry must accurately state appellant's sentence on all counts, state appellant's current restitution balance, and credit appellant with the time he has served on Counts 4 through 23. When appellant completes the approximate 11-month prison term remaining on Counts 4 through 23, he will begin his five-year term of community control on Counts 1 and 3.

*Judgment affirmed in part, reversed in part;*
*case remanded with instructions.*

MENTEL, J., concurs.
BEATTY BLUNT, P.J., dissents.

BEATTY BLUNT, P.J., dissenting.

{¶ 51}  I respectfully dissent. The sentencing error that occurred in 2010 has continued through three appeals, multiple resentencings, and has never been resolved. It has in fact been compounded several times over by every well-meaning attempt to fix it.  But the clear language and intent of R.C. 2929.15, which limits an offender's service on community control to a maximum of five years per case, cannot be ignored.

{¶ 52} As the majority observes, the appellant's sentence in this case was an improper "split sentence," in which the trial court ordered the offender to serve a term of community control consecutive to serving a prison sentence. *Compare supra* at ¶ 10-16 with *State v. Hitchcock*, 157 Ohio St.3d 215, 2019-Ohio-3246, ¶ 1 (plurality holding that "unless otherwise authorized by statute, a trial court may not impose community-control sanctions on one felony count to be served consecutively to a prison term imposed on another felony count").  And it seems plain that every error committed by the trial court and every decision by this court since that initial sentencing, has been at least in part an attempt to preserve the remnants of that sentence.  In any event, it is undisputed that appellant has served over four years of incarceration in prison and over five years while released on community control sanctions.  And while appellant has come nowhere near the completion of his ordered restitution, he has satisfied all of the other conditions of his community control sanction.

{¶ 51} R.C. 2929.15(A)(1) provides, in relevant part:

> The duration of all community control sanctions imposed on an offender under this division shall not exceed five years. If the offender absconds or otherwise leaves the jurisdiction of the court in which the offender resides without obtaining permission from the court or the offender's probation officer to leave the jurisdiction of the court, or if the offender is confined in any institution for the commission of any offense while under a community control sanction, the period of the community control sanction ceases to run until the offender is brought before the court for its further action.

{¶ 53} R.C. 2929.20(K) provides, in relevant part:

> If the court grants a motion for judicial release under this section, the court shall order the release of the eligible offender or state of emergency-qualifying offender, shall place the offender under an appropriate community control sanction, under appropriate conditions, and under the supervision of the department of probation serving the court and shall reserve the right to reimpose the sentence that it reduced if the offender violates the sanction. If the court reimposes the reduced sentence, it may do so either concurrently with, or consecutive to, any new sentence imposed on the eligible offender or state of emergency-qualifying offender as a result of the violation that is a new offense. Except as provided in division (N)(5)(b) of this section, the period of community control shall be no longer than five years. The court, in its discretion, may reduce the period of community control by the amount of time the offender spent in jail or prison for the offense and in prison.

The state and the majority justify their decision to exceed the five-year limitations present in both statutes by contending, along with a few of the other District Courts of Appeals, that the purposes of R.C. 2929.20 respecting judicial release and R.C. 2929.15 regarding community control sentences are different, and accordingly the five-year limitations are independent of each other. *See generally State v. Jenkins*, 4th Dist. No. 10CA3389, 2011-Ohio-6924, ¶ 14 (holding that "R.C. 2929.15(A)(1) and R.C. 2929.20(K) are separate statutes that serve different purposes * * * [and] community control imposed under R.C. 2929.15(A)(1) is separate and distinct from community control imposed under R.C. 2929.20(K)"). *See also State v. Arm*, 3d Dist. No. 14-14-03, 2014-Ohio-3771, ¶ 1, fn. 1 (following *Jenkins*), and *State v. Briggs*, 8th Dist. No. 99980, 2014-Ohio-705, ¶ 14-15 (following *Jenkins*).

{¶ 54} But I am not convinced that the five-year limitations in the two statutes are wholly independent of each other. Had the legislature chosen to adopt two completely separate schemes for community control sanctions, it would have specifically said so. Both the reference to the tolling of community control in R.C. 2929.15(A)(1) and the exception in 2929.20(K) permitting an extended period of community control during a medical judicial release demonstrate that the legislature is perfectly capable of distinguishing special cases from the general five-year limitation period. A better understanding of the statutes shows that the two statutory limitations complement each other and work together. Under this reading, offenders that are initially released on community control sanctions but violate those sanctions and are incarcerated may then be granted judicial release and placed *back* on community control, and are subject to a single five-year limitation rather than multiple five-year limitations. Ohio trial courts only have the sentencing power that they are granted by the legislature, *see, e.g, State v. Fischer*, 128 Ohio St.3d 92, 2010-Ohio-6238, ¶ 22, citing Griffin & Katz, *Ohio Felony Sentencing Law*, Section 1:3, at 4, fn. 1 (2008), and there is no language in the sentencing statutes that suggests it is permissible for a determined court to place an offender on local supervision for ten years rather than five.

{¶ 55} It is notable that at the relevant time, the legislature specifically advanced a truth in sentencing model. So, it would be strange for that same legislature to enact a scheme. And it would have been beyond strange for the legislature, when adopting a scheme specifically designed to advance truth in sentencing, *see, e.g.*, *Woods v. Telb*, 89 Ohio St.3d 504, 508 (2000) (noting that "one of the overriding goals of SB 2 was 'truth in sentencing,' meaning that the sentence imposed by the judge is the sentence that is served, unless altered by the judge") to enact a scheme that would allow a defendant to be directly sentenced to a community control term of five years that could be extended to a second five years after violation without any mention of that extension when the initial sentence was imposed.

{¶ 56} The Fourth District's decision in *Jenkins* provides the backbone for the majority's holding otherwise, but the analysis in that case is sparse. Essentially, *Jenkins* rests on the statement that "other than the use of a common term - -'community control'- - there is no statutory language to suggest that the five-year maximums under R.C. 2929.15(A)(1) and R.C. 2929.20(K) should be combined." *Jenkins* at ¶ 15. But that "common term" is a *term of art* that has a specific statutory definition with specific

statutory references. *See generally* R.C. 2929.01(E) (defining "community control sanction" and specifically referencing R.C. 2929.15). And it almost goes without saying that in practice, when an offender is actually granted judicial release and placed under community control sanctions, trial courts must look to R.C. 2929.15 for any statutory limits on the type of sanctions to be imposed and, perhaps even more importantly, for its options to address violations of those sanctions, as R.C. 2929.20 says nothing about that subject.

{¶ 57} Accordingly, I do not believe that the *Jenkins* rationale stands up to scrutiny. Rather, the logical reading of the two statutes is that they address a single temporal limitation on the trial court's authority to place offenders under community control sanctions, albeit in two different circumstances. I therefore dissent from the majority's holding on this issue, and would remand the case to the trial court for further proceedings consistent with that understanding of the sentencing statutes.

———————————